We'll hear argument next in the case of Bruno against Wells-Armstrong. I please the court. My name is Kelly Walters and I represent the appellant in this matter, former Deputy Fire Chief Jeff Bruno. We are here today because the district court committed reversible error when it granted summary judgment in There are disputed material facts that relate to whether the appellant experienced adverse employment action and if that action was justified. The first issue is whether the annual 2% salary increase was a raise or a bonus pursuant to Seventh Circuit. Can I excuse me, Ms. Walters, I wanted to ask, though, before we jump ahead to adverse employment actions and the like, could you please define for me as this is an ADA problem, what's his disability? And are we really focusing on a disparate treatment on the basis of disability problem or a failure to accommodate kind of problem? It would be, to answer your second question, first, it would be a failure to accommodate. And the, to answer your first question, second... And what's the disability we're accommodating? Is it the dissected aorta or... The aortic dissection, yes. So that's pretty... Do we know what that led to? It's pretty remote compared to lots of problems I've seen. Yes, it's not visible on its face necessarily, but it has been undisputed that it is a disability under the ADA by the parties. And I believe there is precedent to indicate that it is as well. Because why? I mean, what makes it a disability? Because it limits his everyday abilities, including his work abilities and his social abilities. And in this case, his school abilities. All right. I guess, I mean, because when I look at these doctor's notes saying that he, that the requirement to go to school is just sort of one step too many for him, you know, I'm left feeling unsure. You know, why is that the case? You know, is it... How does it relate to the underlying physical disability? My understanding is that he was still recovering at the time, and given some more time, he would be able to commence his studies. Okay. And continue his full-time job. Ms. Walters, where in your brief did you develop a failure to accommodate claim? I had the exact same question as Judge Wood, because here's... I think the case started as a failure to accommodate claim, and it stayed as a failure to accommodate claim through the motion to dismiss. And then the motion to summary judgment, it turned into a reasonable... Or turned into a discrimination and failure to accommodate claim. And the district judge decided that you had to have a material adverse action, which is a discrimination claim, not a failure to accommodate claim. And the only issues on appeal that are developed at all seem to me to be related to a discrimination claim, but not an accommodation claim. Or failure to accommodate. Well, Your Honor, we did have a failure to accommodate in that Mr. Bruno requested the... Excuse me. Requested the accommodation initially when he was unable to continue to go to school, and then he made the accommodation again in August of 2019, when the second contract in one year came to him indicating that he had to go to school if he wanted to receive his raise, which the defendants knew he was unable to do without legitimately affecting himself. In order to have a failure to accommodate, do you have to have a material adverse action? You do? Okay. Yes, the adverse employment action here would be the denial of their raise. Which would lead me into... So what I'm concerned about about that, I see that we have this lengthy discussion about the differences between raises and bonuses and the like. And I actually find this language a little ambiguous. It looks to me like if you have the educational achievement, then you fall into a higher earning category. But that just reminds me of things like the GS scale, that if you have... If you've already passed the bar, you can come in as a GS 13 level 3, and if you do something else, you're a GS 13 level 7, or whatever it is. And it's difficult for me to understand why, if people with a higher educational attainment fall at a more remunerative part on the pay scale, that you get to do that if you don't have the education. So that seems to be what Mr. Bruno is asking for, that he should have the educational bump without the education. On the contrary, Your Honor. He is requesting only his annual raise of 2%. The defendants have argued that this was not even a raise. They're arguing this is a bonus, or in other words, also used as an incentive. They've argued that the temporary nature is of the 2% salary increase is obvious on the face of the document. However... But what it says... I'm looking at the district court's opinion. It says, if the deputy fire chief maintains enrollment in an accredited college program leading to the achievement of a bachelor's degree, then the employer will add a total of 2%, and then there's a number of annual salary to the deputy fire chief's base sum per annum. So it sounds like it's every year that... Or some... I don't know. This is not the world's best drafted thing. But it's... The words per annum, I think, are somewhat helpful for you. But on the other hand, the if-then structure of this language makes it hard for me to see that if the person doesn't have that enrollment, then why do they get the 2% also? What's wrong with that rule? I'm sorry. I don't know if I entirely understand the question. Well, I'm curious as to why... Your position is that he should get the 2% even though he's not satisfying the if clause, right? Yes. Because he can't. Because his physical limitations because of the aortic dissection have now, for at least some period of time relevant to this case, have made him unable to maintain that enrollment. But I don't understand. You need to explain to me why it is they still need to give him the extra 2% if he's not able, with or without an accommodation, let's say, to satisfy that first condition. Because this 2% is actually his annual raise. It has been mischaracterized by the defendants as an educational incentive or a bonus. The district court erred in finding that it was a bonus. And one of the ways they erred in looking at the five factors was finding that it was temporary, which it most certainly is not. Cursory glance at the document. Do you read this as in the year he gets the bachelor's degree, his pay goes up by 2% and then this sort of falls out of the picture and he gets whatever people get? No, I read this as persistent, as did Chief Brunner and... Every year he'll get a 2% raise plus more? Yes. And the base keeps going up? That is how I read that, yes. And I would argue that when deposed, Fire Chief Schultz, who was also a recipient of this 2%, has indicated that this is not of a temporary nature. This persists. Additionally, when the mayor was deposed, she admitted to two things. Is there some case that you're relying on for the proposition that an accommodation under this statute means a higher salary rather than what's needed to be able to do the job? No, Your Honor, that's not necessarily what we're saying here. We're saying that we made the request for an accommodation and it was denied. Right. What puzzles me about this case is that it seems accepted that Bruno could do the job of Deputy Fire Chief with or without enrolling in a bachelor's program and with or without the understanding of the statute is that the accommodation has to be an accommodation to enable somebody to do his or her job. But you're asking not for an accommodation to do the job, but just for more money for doing a job that your client could do anyway. And as I say, I'm not aware of any authority for that proposition or any language in the statute. What am I missing? I think if you interpreted the way you've described it, Your Honor, you'd have a very valid point. However, what we are arguing here is that he cannot continue to do his job with the annual 2% raise that he would be expected and allotted. The way you can deal with my question is either to point to authority or to point to language in the statute. Just repeating your argument doesn't do either of these things, but if you can do one of those things, it would help me. Well, I interpret the argument differently, Your Honor, and I would be happy to provide some supplemental briefing specifically to what you're getting at. No, it's too late for supplemental briefing. This is something that had to be in your brief. Can you point to authority or to statutory language? That's what I'm asking. No. No. Okay. So let me come at this a slightly different way. I think maybe what you're saying is that there is some list of added benefits that people who work for the fire department might wish to have, and because of Mr. Bruno's physical disability from the aortic dissection, he can't compete for one of those extra benefits. He can't do the enrollment in discriminatory on the basis of this. So maybe one benefit is if you do certain things, you get an extra week of vacation, or another benefit might be something else. And he would like to be eligible for this 2%, but he's not able to comply with the prerequisites. And I'm trying to get away from talking about whether these are bonuses or raises, because I'm actually not finding that vocabulary very helpful to this situation. But I think it's more or less what I say. And so then the question is, does everybody have to be eligible to compete for these various extras that the employer may wish to give? As much as I would like to get away from the bonus and raise language, as you would like to, Your Honor, I don't think we can. The district court was correct, actually, when it stated that this case does turn on whether this is a raise or a bonus. I see I'm at two and a half minutes. I would like to reserve that for rebuttal if there's no other questions. Certainly, counsel. Yes. Where did Ms. Walters go? I'm right here. I was trying to be less distracted. Yes, you should just mute. All right, Mr. Matthews. Good morning, and may it please the court. I'm David Matthews, and I represent the defendant appellees, the city of Kankakee, and former Mayor Wells Armstrong and former HR Director Ellickson. This is a case where both settled precedent and justice to the parties point emphatically in the same direction. The district court's decision was correct. It should be affirmed, and as has been hinted at by this panel already, this is fundamentally not a case about Mr. Bruno being a victim of discrimination or retaliation, but just about simple greed. Well, it's not greed. Let's not be too harsh here. What I am still interested in is at least, do you see this as a case where you're defending against disparate treatment? That feels more like what this case is to me, or at least as of the time Judge Bruce writes his opinion, it seems to have evolved into that. Or is this an accommodation, like you'll be eligible for the 2 percent raise two years from now if you, with a little more time to recover, are able to comply with the educational requirements? Judge, there are several questions, like packed in that question. I'll try to take them one at a time. First of all, I do not see it as a disparate treatment claim. Disparate treatment is a separate legal theory. It's a different claim. It requires different facts. That was never pleaded by the plaintiff. Secondly, Your Honor's correct, however, that this case, in a way, started more of a failure to accommodate claim and has since shifted a little bit. The reason for that is that throughout much of this case, Mr. Bruno insisted that his position was that he initially made a request to be allowed to continue in the position as long as he had a doctor's note. He took the position that that accommodation was revoked by the city. He claimed that the city revoked it and required him to attend classes in order to keep his job, and he finally was forced to admit by the records that that was false. So can I say, I mean, one thing I thought he might have been arguing was that there was a certain list of qualifications to be the deputy fire chief, and he gets the position, and on that list was not a college degree or any kind of advanced degrees, even though some of the other candidates did have those extra qualifications. And then at some point along the way, that higher education requirement gets added to the list of criteria that somebody in the deputy fire chief job has to have, and that was kind of superfluous. It was possible to do the job without that advanced degree, and so that would be the theory basing this adverse action on his disability, saying, you're kind of putting, you know, I don't need to leap tall buildings in a single bound, you know, I am qualified to do this job without the extra education. And because remember, he finally gets told you have to sign this, you have to promise to get the extra education. He knows he can't because the doctor isn't going to qualify him for it. I'll start at the end, Your Honor, and I respectfully disagree. Mr. Bruno is never told that he has to get the education to keep his job. That's even with the second contract. Mr. Bruno was told that he can keep the same job, he can keep the exact same salary and benefits, and if at some point in the future he's able to return to classes, he'll get an incentive to do that. So he's never told, and this is why it's not really a failure to accommodate case. He's allowed to continue doing the job at the same salary that he had before, in the same position, with the same benefits, with the chance to earn more money if, as Mr. Bruno testified and admitted, that he hoped that his health would improve and he could get better, he could go back to school. It is true that really at no point was a college degree a formal requirement in the job description. However, the mayor, who has the absolute discretion to who she wants to hire for essentially a cabinet level, department head level position, for a variety of reasons, she testified, one, education is important to her, and two, in fairness to the other candidates whom she was passing over to essentially really help out Mr. Bruno, that as a condition that he would have to work on his degree. And then when Mr. Bruno came forward and said, I can't do that, my doctor says I can't do these extra three to seven hours a week, Mr. Bruno was told, okay, as long as you have a doctor's note, you're excused from classes. And then Mr. Bruno comes along and in addition to continually pushing for more salary, he wants the incentive without meeting the conditions. And to use this in a context that is near and dear or perhaps near and not very dear to the legal profession, if Mr. Bruno was right, then any law firm associate who has a situation where if they need a certain number of hours at a firm, you get a bonus or you get extra money, can come forward and say, well, I would have met the bonus, but I didn't meet my number of hours because I got COVID and I couldn't work as hard. Or I would have met my hours, but I broke my leg and I was out from work, give me the money I would have gotten if I would have been able to work all these extra hours. And if the employer says no, well, suddenly that's a disability claim. There is no case law that would support that. And that's directly to the point asked by Judge Easterbrook. Can I ask you to clarify then your response to one statement in the opening brief of Mr. Bruno? It's on page 11. This is under the discussion of the second contract with the city, July 31, 2019 into August. It says Bruno had never been told that the mayor had trust issues until August 19, the same day that Ellickson told him that he would be demoted if he did not sign the contract. What's the demotion we're talking about? The demotion would be if Mr. Bruno doesn't want to continue in the same position at the same salary with the opportunity to earn money, he would return to his previous rank as a fire captain rather than being deputy chief. So that's the demotion. But you read all of this that if he had just agreed to be deputy chief at the lower salary level, the city was prepared to let him do that. Judge, I don't think there's any dispute about that in the record. If you even look at the request to admit, I believe, in Mr. Bruno's testimony, there is no dispute that in August of 2019, if Mr. Bruno was willing to sign the contract, same salary, same position, no need to go to classes, and if at some point in the future his health improves, he can go to classes and earn an extra incentive. Your Honor, you mentioned that line on page, on the plaintiff's, Mr. Bruno's brief, I get my plaintiffs and appellees confused, that this August was the first time Mr. Bruno had any idea that the mayor had problems with his performance. This is a theme in the plaintiff's briefing, both in the district court and here, that the idea that the city was displeased with him for not separating the ranks was just sprung on him and this suspicious timing is a reason to infer pretext. It is telling, Your Honor, that when Mr. Bruno gives that narrative in his briefs, there's no citation following it. There's no citation to back it up and the reason is it's completely belied by the record. I will direct this court to the short appendix, pages 45 and 46, where Mr. Bruno admits specifically to a counseling session with HR Director Ellickson and he admits that Director Bruno leaked confidential management level disciplinary discussions and Mr. Bruno also on those pages admits that the mayor and Ellickson believed that he continued talking to Ms. Giese, another firefighter who had filed a lawsuit after being told not to, and that they believed that information in Ms. Giese's lawsuit came from Mr. Bruno and I will also direct, Your Honors, to page 17 of my brief in this court where I cite Mr. Bruno's deposition where he's, again, it is that page, page 155 of Mr. Bruno's deposition. He admits that Ellickson, quote, brought up the trust issue and about differentiating between a leader and a subordinate so it is simply untrue and unsupported by the record that Mr. Bruno had no idea that city management had concerns about his performance and that this was sprung on him and that it is therefore a pretext. As far as, and I understand, Your Honor, in particular's desire to avoid the bonus raised dichotomy, that said, I need to respond to a statement also made by Mr. Bruno on appeal and that he pushed in his brief as well, which is that there's no evidence in the record that this extra 2%, we'll call it, was going to be temporary. That is not true. In fact— But what's the, what are the words per annum doing at the end of that clause? It's a very strange way to word, I mean, if it was just a one-time extra payment of a little in excess of $2,000, then fine, looks like a bonus, you know, it's like a signing bonus or being told 2% of some base per annum just doesn't sound like a one-time event. It's not a one-time event in the sense that he could only get the money for one year. The per annum is part of the calculation as to how much the incentive is and the testimony is it was set at 2% because that's what the city had in its budget, but what I want to, and I'll continue to answer the question because it looks like your honor might be a little confused. On page, also on page 11 of my brief, I quote Mr. Ellickson's deposition. It's Mr. Ellickson's deposition back at 21-3 below where Mr. Bruno's counsel, not me, Mr. Bruno's counsel asks Mr. Ellickson, when will the money stop? And Mr. Ellickson responds, either if he got his degree or he was unable to go to school any longer. And what may not be entirely clear is that while a number of these city contracts incentivize education, they do it in different ways. The union contract has different, essentially to what your honor was speaking of, it's very similar to the GIS scale. For department heads, it's different because department heads are up to the mayor and there's no real dispute about this in the record, the plaintiff admitted it. Some of the contracts just flat out pay a higher salary if you have higher degrees. Others provide an incentive by paying for tuition, books, et cetera. And others like Mr. Bruno's offer an incentive as long as you are enrolled. So there's a lot of different ways education is incentivized. And this goes to the fact that these sorts of incentives are discretionary and such that telling Mr. Bruno that he has to meet the condition that if then language, your honor, there is no case that I have seen or that the plaintiff who has the burden of proof has come forward with where an if then language amounts to a raise. My time is running down. I want to hit one other thing briefly, which is the issue of the retaliation claim. The plaintiff attempted to make this a retaliation claim. It's sort of part of how the case has shifted from the plaintiff. Specifically on page 23, their theory of retaliation is that the protected activity that triggers the retaliation is Mr. Bruno's talking to Ms. Giese who filed a different lawsuit. That is not protected activity under the ADA. The Mr. Bruno who has offered no case and no argument to show that it's protected activity under the ADA. He continues to- There's no link between that event and whatever disability he may have had from the aorta. You're saying that's what I'm saying? You're saying there's just no connection between the two? I think that is true, your honor, but perhaps inartfully I'm trying to make a different point, which is that the ADA retaliation provision is specific to ADA protected activity. The statute's language doesn't cover all sorts of any other kind of- No, it's not a general whistleblower or whatever statute. And Mr. Bruno was trying to read it that way. He can't make an ADA retaliation claim unless the retaliation is based in activity protected by the ADA. Talking to someone else who filed a gender discrimination lawsuit might, in theory, be protected by some other statute. That's not issue here, but it's not protected by the ADA. And that is why he doesn't- one of the many reasons why he doesn't have a retaliation claim. He doesn't have a discrimination claim. I have about 90 seconds. Does the court have additional questions? Hearing none, thank you very much, counsel. Thank you for your time, your honor. Anything further, Ms. Walters? Yes, your honors. Just to sum up, essentially, in order to entertain the defendant's argument, we have to talk about the dreaded race versus a bonus issue again, which is, in essence, a fact-finding issue as the contract drafted by the city was ambiguous in nature, as has already been clear. The defendant is continuously claiming that the temporary nature of this two percent salary increase is attested to in the record by the contract itself on its face and by Ellickson's testimony. However, this is very much disputed by the fact that the contract says nothing about the temporary nature of the two percent salary increase. Additionally, the mayor herself, when she was deposed, testified to two things. Number one, that if the two percent increase was going to be temporary, it would say that in the contract. And number two, upon being shown the contract, it did not say anything about the two percent increase being temporary. Additionally, as I may have mentioned earlier, Chief Schult, Mr. Bruno's direct supervisor, was also a two percent recipient of this increase, and he has testified to the fact that it is persistent and not temporary in nature. Furthermore, even in Mr. Bruno's deposition, defense counsel refers himself to the two percent as a salary increase and not a bonus or an incentive. Additionally, the circuit has repeatedly held that the determination of intent behind an ambiguous contract is an issue for the fact finder. This matter should have gone in front of a jury and should have been found as such. Let's get a little. In summation, a 30-year veteran of the Kankakee Fire Department was told that the only way to obtain a two percent salary increase would be to engage in a behavior that is indisputably endangering to his health. He requested that the dangerous condition be removed in order for him to receive his raise. He understood this two percent salary increase to be a raise. Following his request for an accommodation, he suddenly recharacterized the salary increase to be a bonus. The city relied on its own ambiguous contract, drafting to back this claim. The district court wasn't wrong when it said this issue turns on whether the salary increase is a bonus or a raise. However, the district court was mistaken when it concluded that the intent behind the contract was an issue of law. This is contrary to this court's precedent. As such, we respectfully request this court overturn the district court's summary judgment. Thank you. Thank you very much, counsel. The case is taken under advisement.